State ex rel. Lasserre vs. Michel et al.

Rehearing refused.

---

## No. 13,896.

STATE EX REL. JOSEPH LASSERRE VS. BLANCHE MICHEL ET AL.

### SYLLABUS.

1. It is error for a District Court to refuse to entertain, an application made to it by a husband and father, during his marriage, for a writ of *habeas corpus* to be directed to his wife, the application being based upon an alleged illegal detention by the latter of their minor child, upon the ground that the spouses can only bring suit against each other in specially permitted cases, and that application of this character is not authorized by law.

2. A writ of *habeas corpus* is essentially a writ of enquiry in aid of right and liberty in respect to matters in which the State has an interest, though private rights may be involved. The writ simply brings the parties before the

court for the ascertainment of the facts of the case. The court is clothed with a sound discretion, after hearing, to grant or refuse to the applicant the relief asked for. Neither spouse has an absolute right to the custody of the children.

APPEAL from the Civil District Court, Parish of Orleans— St. Paul, J.

*Edwin T. Merrick, Philip Gensler, Jr.,* and *Walter S. Lewis,* for Plaintiff, Appellant.

*Frank McGloin* for Defendants, Appellees.

The opinion of the court was delivered by NICHOLLS, C. J.

## STATEMENT OF THE CASE.

NICHOLLS, C. J.   The plaintiff alleged that about the 19th of October, 1898, he was married to Blanche Michel, in the city of New Orleans; that of his said mariage there was issue, a girl child named Lucille, who was, at the institution of this suit, 19 months old; that on or about the 10th of January, 1901, his wife left his marital domicile and was then residing at No. 738 Napoleon avenue, and although summoned to return to the marital domicile had refused to do so. That his wife had taken away from him his said child and declined to return her to his care, and she was therein aided and abetted in the illegal retention of said child by her father, Henry Michel.

That his wife was unfit to have the custody and control of the said child for the reason that she was wanting in discretion; that the child had been in bad health for some time and she had exposed her by taking her away from home sick, contrary to the instructions of plaintiff's physician, among other occasions on December 31st, 1900; that he, as husband and master of the community, was entitled to the custody of the child.

He prayed that his wife be authorized by the court to defend in this proceeding; that a writ of *habeas corpus* issue to his said wife, and said Henry Michel, commanding them to produce the said child to the court on the 15th of November, and to show cause on said day why the writ should not be made absolute and relator should not be given the

State ex rel. Lasserre vs. Michel et al.

custody of his child; that after due proceedings the writ be made abso‐ lute. He prayed for general relief and for costs. The petition was sworn to.

The court authorized the wife to defend the suit and to stand in judgment therein and ordered that a writ of *habeas corpus* issue to her and to her father, Henry Michel, commanding them to produce the child in open court on the day fixed, and then and there to show cause why they kept the child detained, and why she should not be delivered to the care and custody of the relator.

The wife excepted to the petition on the ground of no cause of action, and for answer to the petition averred that she was in possession of the child; that the child was of tender years and needed a mother's care, and could not, with safety to said child, be deprived thereof. She control of her own child. She averred that her husband did himself force her to leave the home he had only recently set up for her, having deliberately abandoned her child in said home, discharging the only servant, cutting off her credit and leaving her and her child without either money, food or protection; that relator had never adequately sup‐ ported either herself or her child, but had left upon her own family, during the entire time of their married lie, not only the charge of sup‐ porting and housing her and her child, but also of supporting and sheltering himself; that he had more than once, prior to this occasion, abandoned his family and at other times threatened so to do; that by his long continued course he had forfeited his right to have her or her child and that he had frequently declared his inability to do so; that respond‐ ent and her child had with her parents a safe and comfortable home, where they had extended to them kindness and affection and had every need supplied; that relator could not support, maintain, or educate said chil or give it the necessary care. She prayed that the writ of *habeas corpus* be denied and that she have judgment given her for the custody of the child.

The District Court rendered judgment refusing the application, dis‐ missing the proceeding, and maintaining the exception of no cause of action. It held, under Article 105 of the Code of Practice and the authority of Cowand vs. Pulley 9 Ann. 12; Theurer vs. Schmidt, 10 Ann. 296; Bourdette vs. Bourdette, 18 Ann. 41; Moore vs. Moore, 18 Ann. 614, that the public policy of the State, since the adoption of the Code of Practice, was against the maintenance of any civil suit between

husband and wife, no matter what the cause of action or how serious the complaint when not within one of the exceptions of Art. 105 C. P. That it was against the policy of the State that husbands and wives should be heard complaining of one another during marriage. The court, in its opinion, referred incidentally to Articles 104 and 105 of the Code of Practice, to Articles 119, 120 and 229 of the Civil Code, to Carroll vs. Carroll, 42 Ann. 1074; Suberrith vs. Adams, 46 Ann. 124; State ex rel. Huber vs. Judge, 49 Ann. 1508; Bermudcz vs. Bermudez, 2 M. 181; Heno vs. Heno, 9 M. 643; and Laycock vs. Black, 5 Ann. 189, and declared that "it did not always follow ·that because there might be an undoubted obligation (right), there must necessarily be a means of enforcing it (C. C. 1757); that the legislator might in his wisdom have determined that it were better in the public interest that the fulfillment of certain obligations, however desirable, should not be made enforceable in law, and it was of the opinion that since the Code of Practice, the duties which husband and wife owed to each other and to their children were of this nature."

The relator appealed.

## OPINION.

In the brief filed in this court on behalf of the mother, counsel analyzes and discusses the petition declaring that an examination of the same will show that there is no just cause of complaint against the wife justifying her deprivation of the custody of her only child; that it is not alleged that she is a woman of vicious life, or that the child is in surroundings not suitable and comfortable.

The District Court did not, in dealing with the question, consider the pleadings or the merits at all, but based its action upon the broad proposition that a husband is without legal right during marriage, at least without the simultaneous pendency of an action for divorce or separation from bed and board, to apply to a court of justice for a writ of *habeas corpus* directed to a wife for the custody of their child, and that courts were without legal right to entertain such an application, no matter what the particular facts of the particular case might be. Under such circumstances, consideration of the pleadings becomes unnecessary.

Counsel of the relator urges that a child remains under the authority of his father and mother until his majority or emancipation. That in case of difference between the parents, the authority of the father pre-

vails, (citing Bosworth vs. Beiler, 2 Ann. 293; Woods vs. Perkins, 43 Ann. 349, and Gates vs. Renfrae, 7 Ann. 570;) that the writ of *habeas corpus* is a writ in the *name of the State of Louisiana* (C. P. 791).; that at common law a husband and wife can not sue each other, because they are regarded as one person (1st Ed. Am. & Eng. Ency. of Law, 9th Vol., p. 799; 1 Blackstone, 120; 2 Kent, 129; 8 Queen's Bench, 934; Doe vs. Daley); but that the writ of *habeas corpus* would lie in favor of the one against the other (5 East. 221, The King vs. DeManneville; The People vs. Land, 2 Johnson, 375 (N. Y.)

Counsel calls the attention of the court to Bermudez vs. Bermudez, 2 Martin, 182-183; Hyde vs. Jenkins, 6 La. 427, and Prieto vs. St. Alphonsus Convent, 52 Ann. 683. It is urged that, under the court's view "the husband, to enforce his legal rights, would either be driven to an action of separation from bed and board or for a divorce, which it was not the policy of the law to encourage (Gahn vs. Denby, 36 Ann. 74); or, he would have to have recourse to fraud or force." In the case of Bermudez vs. Bermudez (2 Martin, 182-183), the court said:

"The paternal house is the proper residence of the family. If the wife choose to absent herself from it without offering to the court any reason, the court will therefore presume that none exists. *De non apparentibus et non existendibus eadem est lex.* In such a case they must consider her as the faulty parent. The father is the master of the family. His authority as to its civil force is founded on nature, and the care which it is presumed he will have for their education. While his conduct is proper, the court can not interfere with his authority, and will cause it to be respected. The mother, however, is not without her rights. If she be compelled to live separately from him on account of ill treatment; if, from his conduct, she can show that the children are not likely to receive a proper education, or that it will be a dangerous example to them, the court will afford its aid to her solicitude, especially in regard to the daughters, and deprive the father of a power which it is likely he will abuse. For the right of the community, to superintend the education of its members and disallow what for its own security and welfare it sees good to disallow, goes beyond the right and authority of the father." (Blisset's case, Loft's Reports, 748-749.)

It has been held elsewhere that where the wife breaks up the household and departs from her husband's home wrongfully, whether it be done of her own purpose or from weakly yielding to the evil influences of others, she is not to be allowed to take with her the children of their

union. (People vs. Olmstead, 27 Barb. 9; People *ex rel.* Nickerson vs. ———————, 19 Wend. 16; Church on *Habeas Corpus,* Sec. 443.)

But the father's right to the custody of his children is not absolute, even during marriage, and even where there is no suit pending for a separation from bed and board. The courts in the United States, while adopting the legal principle that the father is usually entitled to the custody of his children, have been inclined to modify it by adopting the equitable principle that this right must yield in some instances to considerations affecting the welfare of the children, and by regarding more highly than was formerly done in England, the rights of the mother. (Hurd on *Habeas Corpus,* Sec. 441.)

Thus, while the father may have the first title to custody of the children by nature, his claim may be disregarded by the court acting on a principle of natural justice, if his character and conduct render him unfit to be a guardian. They will not be delivered to him on a writ of *habeas corpus,* when it would be manifestly to their injury to do so; nor taken from the mother when the mother, blamelessly on her part, had been forced to live with her father, apart from her husband, and when it appears that they are well provided for by the mother and not likely to be by their father. Particularly is this so in cases where the matter at issue is the custody of an infant child of such tender years as to require the personal care of the mother, where the minor child is out of the possession and custody of the father. It by no manner of means follows that the prayer of the petitioner will be granted because the writ has been ordered to issue. The writ simply brings the parties before the court for the purpose of enquiry and the ascertainment of the facts of the case. The court is clothed with the power, with a sound discretion, to grant or refuse relief. The child itself, in contentions of this kind, is entitled to some measure of protection from the court. The parents, in issues of this kind, are not simply urging their own legal rights, but are acting for and on behalf of the child, and in respect to this matter the State itself, as stated in the Bermudez case, has an interest which goes beyond the mere right and authority of either the father or mother. The right of neither is absolute; the right of either, or both, depends upon matters *in pais,* into which it is the object of the writ to have full enquiry through an exhaustive examination, under oath, so that the tribunal may have before it all the light practicable.

We scarcely think that a writ of *habeas corpus* directed to a woman touching the custody of a minor child can be called a suit by the hus-

band against the wife, because the party invoking the State's action is a husband, and the party against whom the writ is directed is his wife, and the child is theirs. It is the result of a suggestion that the child is improperly restrained of its liberty, and that enquiry should be made into the facts of the case. It may be observed in this connection that illegal restraint may exist without the exercise of force or coercion. (Church on *Habeas Corpus*, Sec. 439.)

When the writ issues the wife is called into court in the name of and by the State itself, though this be done on the relation of the husband. It is true that the ultimate action of the court upon the writ may be in aid and in enforcement of private rights—of the rights of the husband or of the wife in the premises—but the result is incidental and consequential.

The writ of *habeas corpus* is essentially a writ of enquiry, and upon matters in which the State itself is concerned, in aid of right and liberty. As mere enquiry is primarily sought and the costs of the proceeding will fall upon the relator in case the action of the State has been unadvisedly sought and obtained, the exact or precise legal interest which the relator may have in inaugurating the enquiry and in its result, should not be subjected to too rigid a test at the instance of those whose conduct and action are sought to be investigated.

We do not think that either husband or wife should be driven to the necessity of instituting an action of separation from bed and board or divorce, to have the matter of the legal custody of the children judicially enquired into. Actions of separation or divorce should not be forced, nor do we think that where husband and wife are, as a matter of fact, living apart, the spouse out of the possession of the children of the marriage and claiming the legal right to have such possession, should be driven to force or to fraud to obtain the same. Such a course of conduct would tend directly to breaches of the peace and to violence. It is right, proper and legal for the party entitled to the possession of the child to obtain the same and under the sanction of judicial proceedings. It would be stretching the terms of Article 105 of the Code of Practice for no good purpose and with no good results to hold otherwise. That article does not refer to proceedings of that character.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed; that the application for the writ of *habeas*

*corpus* be reinstated, to be proceeded upon according to law, under the exceptions and answers filed by the defendants.

BREAUX, J., dissents for reasons assigned.

Rehearing refused.