BOARD OF CHOSEN FREEHOLDERS OF CAMDEN COUNTY, PLAINTIFF AND DEFENDANT IN ERROR, v. GEORGIANNA W. RITSON, ADMINISTRATRIX, DEFENDANT AND PLAINTIFF IN ERROR.

Submitted December 9, 1902—Decided March 2, 1903.

1. It is within the power of the legislature to provide remedies against the estates of insane persons while they are living or after their death.

2. An insane female, who is married, may be held personally liable for her maintenance in any county insane asylum under the supplement approved May 9th, 1894, to the act entitled "An act to provide additional accommodations for the insane of this state." The fact that the husband might be liable for her support does not affect the statutory liability.

3. For a claim for which the insane person could be held in her lifetime, her estate may be held after her death.

4. The words "every insane person supported in any county insane asylum shall be personally liable for his maintenance therein," as used in the supplement of May 9th, 1894, will be construed as if the words were, "every insane person 'maintained' in any county insane asylum shall be personally liable for his maintenance therein."

---

On error to the Camden Circuit.

For the plaintiff in error, *Howard Carrow.*

For the defendant in error, *George J. Bergen.*

The opinion of the court was delivered by

FORT, J.  This was an action in the name of the chosen freeholders of the county of Camden to recover from the defendant, as administratrix of Elizabeth A. Rigg, deceased, for her board in the county hospital for the insane of Camden county.  The deceased was received into the hospital as a private patient in 1889, and the rate of board was then fixed at $3.50 per week.  She died on May 31st, 1900.

At the time she entered the asylum she was married, and her husband, John Rigg, was then alive.  He died December 26th, 1898.  During the time she was in the hospital prior to his death the weekly amount of board was paid in varying and various installments, so that there remained at the time of his death only $189 then unpaid.  The balance of the claim sued for was for board accruing after January 1st, 1899, the whole claim being $449.50, exclusive of interest.  The proof was that an account was kept of the board in the regular books of the institution, and that the original charge was made against the lunatic, the deceased, and that all payments that had been made were credited on this account, although they were all paid by John Rigg, the husband.  The county relied upon its right to recover upon the provisions of two separate acts.  The first of these upon which the county relied is a supplement to "An act to provide additional accommodations for the insane of this state," approved March 3d, 1880, the third section of which authorizes "the board of freeholders of any county to receive insane patients in county asylums for pay under such regulations as they may prescribe."  *Gen. Stat., p.* 1993, § 71. The other act was a further supplement to the same act, which was approved May 9th, 1894, and reads as follows: "That every insane person supported in any county insane asylum shall be personally liable for his maintenance therein and all necessary expenses incurred by the institution in his behalf, and the committee, guardian or relative that would have been bound by law to provide for and support him, if he had not been sent to such asylum, shall be liable to pay the expenses of his clothing and maintenance in the asylum and actual necessary expenses to and from the same."  *Gen. Stat., p.* 1995, § 83.

It will be unnecessary to consider whether the first statute above quoted is applicable, and whether, under it, the estate of the lunatic can be held for a reasonable or a stipulated payment for maintenance of the lunatic in the asylum, when, at the time of the committal to the asylum, the lunatic is a married woman, whose husband is chargeable by law with her support. All the accounts sued upon in this case arose after the passage of the supplement of 1894. This statute is quite broad: insane persons and other persons not *sui juris* are wards of the state, and may be sued and their estate charged in such manner as is authorized by statute. That it is within the power of the legislature to make the estate of an insane person liable for his or her maintenance does not seem to be open to controversy. This statute, in that regard, is but declaring of that which was a fact at common law, and, in this respect, the statute simply gives to the board of chosen freeholders, when they furnish the maintenance at public expense, the right to recoup, for the public, the expense thus incurred. The action in this case was defended upon two grounds—*first,* that this statute could not apply where the insane person was a married woman, as, by the common law, the husband is chargeable with the maintenance of the wife, and that this duty applies in case of insanity as in other cases, and *second,* that if this statute can be held to apply to married women, that it does not apply to the case of the deceased, who was a private patient, but only to such patients as are supported in the institution, and that the word "supported" in this statute must be held to apply only to such patients or persons as are known as pauper or indigent insane.

As to the first contention, the statute is a sufficient answer. It says specifically that every insane person supported in any county insane asylum shall be personally liable for his maintenance therein. This applies to a married woman as well as to any other person. The state fixes by statute when the property of a married woman shall be liable for her obligations, and it may provide for her personal liability, as has been done by this statute. It appears in this case, however, that this account has always been charged against the lunatic; that the

county has never charged it against her husband, and, so far as the proof in the case goes, there is nothing to indicate that there was any purpose on the part of the county to collect or enforce the claim against anyone except the lunatic or her estate, and hence there is nothing, in our judgment, in the first ground of defence.

The second contention, that the word "supported" in this statute makes the act apply only to pauper or indigent insane, is a result which would emasculate the statute. It would be of little use to pass a statute authorizing the counties to hold paupers and indigents personally liable. It is difficult to conceive that the legislature would have passed an act to enforce a personal liability against a pauper or indigent person. The very statement of the proposition carries with it its refutation. The words "pauper and indigent" convey the meaning that the lunatic has neither money nor estate. The word "supported," in this statute, should be construed as if the word "maintained" were used," so that, to give force and effect to the statute, it should be construed as if it read, "every insane person maintained in any county insane asylum shall be personally liable for his maintenance therein." By this. construction full force and effect is given to the statute and its usefulness to the public is upheld. The construction contended for by the defendant would nullify the act. A construction which will produce that result will never be given by the court if any other that is reasonable can be given. The learned trial justice in this case instructed the jury to render a verdict for the plaintiff for the full amount claimed, and in this there was no error.

A suit of this nature against the administrator of a lunatic has been held maintainable by this court. *Van Horn* v. *Hann,* 10 *Vroom* 207.

The Circuit Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 12.

*For reversal*—None.