STATE *ex rel.* GEORGE J. DEEB v. L. L. FABISINSKI, Judge.

152 So. 207.
Division A.
Opinion Filed July 18, 1933.
Supplemental Order Filed July 26, 1933.
Rehearing Denied October 21, 1933.

*A. A. Fisher, Philip D. Beall* and *B. K. Roberts,* for Relator.

· *John M. Coe, E. Dixon Beggs,* State Attorney, for Respondent.

ELLIS, J.—On the 10th day of June, 1933, George J. Deeb was by order of the County Judge of Leon County adjudged to be insane and by said order was committed to the Florida State Hospital, which is located in Gadsden County. ·:

· On April 19th, 1933, Deeb was arrested in Escambia County on a charge of murder. He was detained until May 23rd, 1933, when he was released on bond. conditioned upon his appearance at the next term of the Circuit Court for Escambia County to answer the charge of murder. On June 15th, five days after Deeb's committal to the hospital, the Grand Jury in Escambia County indicted him for murder.

On June 16th, Mr. Justice TERRELL, of this Court, issued a writ of habeas corpus, returnable before a judge of the Circuit Court for the Second Judicial Circuit, for the purpose of inquiring into the cause of the detention of Deeb by the Florida State Hospital, or W. C. Thomas, its superintendent. Service of the writ was made on Thomas the same day and service accepted by him.

Honorable L. L. Fabisinski, Judge of the First Judicial Circuit for Escambia County, on the 16th day of June made and entered an order on petition of the State Attorney for the First Judicial Circuit that W. C. Thomas, Superintendent of the Florida State Hospital, produce before Circuit Court at Pensacola, Florida, at 10 o'clock A. M. on the 19th day of June, A. D. 1933, "the body of said George Deeb, alias George Deebs, to answer the charge of murder in the first degree in this court and to do and perform such other orders in this cause as may be done herein." The suggestion for a writ of prohibition alleges that Judge.

Fabisinski issued a writ of habeas corpus directing the Superintendent of the Hospital to produce the body of Deeb before the Circuit Court in Escambia County and the return of the judge avers that as judge under the terms of the Constitution he "is under the duty to issue among other writs the writ of habeas corpus and all writs proper and necessary to the complete exercise of the said court's jurisdiction." The return also avers that the "writ of habeas corpus so issued by this respondent is the appropriate criminal process of said court necessary and proper to the exercise of the jurisdiction thereof." It does not appear however that a writ of any description was actually issued or attempted to be served.

On suggestion of Deeb through his attorneys, this Court on the 17th day of June issued a rule *nisi* in prohibition to the Honorable "L. L. *Fabinski*" (so spelled in the body of the rule, and "Fabinsinski" in the title) to show cause why a writ of prohibition should not be issued as suggested and that pending the determination of the cause all pending proceedings should be held in abeyance.

The two grounds upon which Deeb asked for a writ of prohibition to be directed against Judge Fabisinski are first, that the Judge, as Judge of the Circuit Court for Escambia, has no authority to issue a writ of habeas corpus returnable before him in Escambia when the person whose detention is to be inquired into under such writ (described in the suggestion as "the subject matter") is "outside the jurisdiction" of the judge issuing the writ; that therefore the writ issued by Judge Fabisinski is void. The second ground is that a Justice of the Supreme Court having issued a writ of habeas corpus returnable to the Judge of the Second Judicial Circuit and directed to the Florida State Hospital, or Thomas its Superintendent, to inquire into the legality

of Deeb's detention, and that such writ was served first, the jurisdiction of the Circuit Court for the First Circuit and any judge thereof was excluded.

On the same date Honorable J. B. Johnson, Circuit Judge for the Second Judicial Circuit for Gadsden County, made an order dated at Tallahassee remanding Deeb to the custody of W. C. Thomas, Superintendent of the Florida State Hospital, and the Florida State Hospital to be there held according to law.

On June 22nd Judge Fabisinski made a return to the order in prohibition. The return contains averments which in substance are that Deeb was arrested on a charge of murder, released on bond and then indicted for the offense of murder in the first degree; that Deeb has been committed to the Florida State Hospital as herein before recited. The return avers that on petition of the State Attorney a writ of *"habeas corpus ad prosequendum"* issued to require the attendance of Deeb at the term of the Circuit Court for Escambia County at 10 o'clock A. M. on the 19th of June, A. D. 1933, to answer the charge of murder in the first degree in that court "as will fully appear by a copy of said writ attached hereto and marked Exhibit 'D' and made a part of this return." Exhibit "D" is not a copy of a writ of any character. It is merely a copy of an order made by the judge that W. C. Thomas produce the body of Deeb.

The return contains a demurrer to the allegations contained in the suggestion for the writ of prohibition, as that the removal of Deeb would injure his health and "prejudice his rights" to remove him out of the "jurisdiction in which the Florida State Hospital is located." The return urges that the fact of a writ of habeas corpus having been issued by a Justice of this Court should be pleaded in abatement to the respondent's jurisdiction.

It is contended in the return that as the Circuit Court for Escambia County has jurisdiction to try the indictment for murder against Deeb, and under Article V, Section 11, of the Constitution and Section 8204 C. G. L., 1927, the respondent as Judge of the Circuit Court for Escambia County has jurisdiction to issue all writs and process necessary to the exercise of the court's jurisdiction and that such process runs through the State and has full force and effect therein; that the writ issued is necessary to enable the court to perform "its legal duty of ascertaining the capacity of the said George J. Deeb to stand trial upon the said charge of murder and if so competent to hear and determine the same."

The cause came on to be heard and was orally argued before this Court on the suggestion for the writ of prohibition, the rule *nisi* and Judge Fabisinski's return.

. The great writ, known commonly by the name of habeas corpus, was a high prerogative writ known to the common law; the object of which was the liberation of those who were imprisoned without sufficient cause. See Ex-parte Watkins, 3 Pet. (U. S.) 193, 7 L. Ed. 650.

It is a writ of inquiry upon matters of which the State itself is concerned in aid of right and liberty. State v. Michel, 105 La. 741, text 747, 30 South. Rep. 122, 54 L. R. A. 927; *Ex parte* Coupland, 26 Tex. 386.

The name of the writ is *"habeas corpus ad subjiciendum et recipiendum."* It is not an action or suit but is a summary remedy open to the person detained. It is civil rather than criminal in nature and is a legal and not equitable remedy. See *Ex-parte* Watkins, *supra; Ex-parte* Bollman, 4. Cranch (U. S.) 75, 2 L. Ed. 554.

The early history of the writ is very interesting but unimportant in this discussion. It is sufficient to state that

while the writ had been in use in England from remote antiquity it was often assailed by kings who sought tyrannical power and the benefits of the writ were in a great degree eluded by time-serving judges who assumed a discretionary power in awarding or refusing it and were disposed to support royal and ministerial usurpations. Owing to such abuses the writ became powerless to release persons imprisoned without any cause assigned. In the fight·by the people against the abuses of the writ, petitions of rights were submitted to the king and during the reign of Charles I, A. D. 1641, provisions were enacted intended to make the writ effectual. These activities were however vain. At last, in 1679, the Statute 31 Chas. II Chap. 2 was enacted. That Act is known as the Habeas.Corpus ·Act. That Act has been substantially incorporated into the jurisprudence of every State in the Union and the right to it secured by their Constitutions. The Constitution of the United States provides that the privilege of the writ of habeas corpus shall not be suspended except in certain circumstances. Art. I, Sec. 9, par. 2, U. S. Const.

The application for the writ may be made by an agent or friend, wife, husband, or the person detained himself, or by parent for his child, guardian for his ward, or special bail for his principal. In any event it must be a friendly person in the interest of the person illegally detained. But mere volunteers who do not appear on behalf of the prisoner or show some right to represent him will not be heard. See Puterbaugh's Pleading and Practice, Chap. XIV, p. 522. Such is the nature and purpose of the great writ generally. known and spoken of as the writ of habeas corpus.

Other writs called "habeas corpus" were issued and in common experience, they took their names from the characteristic words which they contained when the process and

records of the English courts were written in Latin, but they were distinguished from the great writ in question and from one another by the specific terms declaring the object of the writ. The writ of *habeas corpus ad subjiciendum et recipiendum*, having acquired in public esteem a marked importance by reason of the nobler uses to which it was devoted, has, say the authorities, so far appropriated the generic term to itself that it is now by way of eminence commonly called the writ of habeas corpus simply. Bouvier Law Dictionary; 21 Cyc. 284.

The names of other writs containing the phrase habeas corpus were *"habeas corpus cum causa."* 10 Cyc. 1364. *Habeas corpus ad deliberandum et recipiendum; habeas corpus ad faciendum et recipiendum; habeas corpus ad prosequendum; habeas corpus ad respondendum; habeas corpus ad satisfaciendum* and *habeas corpus ad testificandum."* 21 Cyc. 284.

These writs, however, have all completely fallen into disuse except the writ of *habeas corpus ad testificandum*, which is sometimes used in this country to compel a prison warden to produce in court the body of a prisoner in order that he may testify. 10 Mod. Am. Law 631.

The great writ of habeas corpus is the one mentioned in Magna Charta in the year 1215; the writ which alone was the subject of the Acts of 16 Chas. I and 31 Chas. II. It was the writ referred to in the Declaration of Independence and secured to the people of this country by the Constitution of the United States and the Constitutions of the different States.

The writs of *"habeas corpus ad deliberandum et recipiendum"* and the writ of *"habeas corpus ad prosequendum"* were identical in purpose. They were writs used to remove a prisoner to the jurisdiction wherein an offense was

committed. *Ex-parte* Bollman, *supra;* 3 Blackstone's Comm. 129, 130. But those writs have, as stated, fallen into disuse long since. A capias or a bench warrant, appropriate process for the apprehension of a person charged with crime, runs throughout the State and may be served in any county under the regulations prescribed by statute. Secs. 8204, 8318, 8321, 8375, C. G. L., 1927.

In the case of Passett v. Chase, 91 Fla. 522, 107 South. Rep. 689, the Court discusses a commitment after indictment and the formalities required. Counsel for the respondent argue that while the court might have issued a capias or a bench warrant the method pursued was the more courteous, affable, gracious manner of acquiring the legal custody of Deeb from the legal custody of him by the Superintendent of the Hospital whose duty it is under the law to detain him. Sec. 3657, C. G. L.

Deeb was sent to the Hospital for his care, custody and treatment. Sec. 3649 C. G. L. It is the superintendent's duty to detain him. Sec. 3657, *supra.* It is also true that in cases where the patient, an insane person, does not require confinement to prevent injury or violence to others the court is required to order the sheriff to deliver the patient to the county commissioners for care and maintenance. A responsible person in such cases may by order of the court have the care and custody of a person adjudged to be incurably insane. Sec. 3657, *supra.*

So under the statutes of this State a private individual may have the same power of custody of a person judicially declared to be incurably insane, as the Superintendent of the Hospital. The order of commitment made by the county judge or judge of the circuit court, constitutes the authority of the person charged with the custody of the insane person. So being in a hospital in the custody of

the superintendent affords to Deeb no greater or more secure asylum from arrest on criminal process than if he were by order of the court in custody of a private person.

It is not the legal custody of an insane person that affords a sanctuary to him from arrest. It is the fact of his insanity, judicially declared, which affords to him, if at all, immunity from arrest and imprisonment on a criminal charge or from being held to bail. The person to whom an insane person is committed for custody is merely guardian to such insane person. The hospital is not a prison, it is a house of protection, a shelter or home for persons judicially declared insane. The superintendent is merely his guardian. The general rule is that an insane person is not exempt from liability to arrest on a criminal charge unless he is exempt by express statutory provision. Deusen v. Newcomer, 40 Mich. 90.

In the State of Kansas a person judicially declared to be insane cannot be held to bail or imprisonment on a criminal charge. In re. Kidd, 40 Kan. 644, 20 Pac. Rep. 526.

Lunacy proceedings are in their nature civil rather than criminal. Cogan v. Cogan, 202 Mass. 58, text 61, 88 N. E. Rep. 662; State v. Guinotte, 257 Mo. 1, 165 S. W. Rep. 718, 51 L. R. A. (N. S.) 1191, Ann. Cas. 1915 D 658; White v. White, 108 Tex. 570, 196 S. W. Rep. 508, L. R. A. 1918 A 339.

The custody of idiots and lunatics from a very early period became vested in the crown by delegated authority. Yeomans v. Williams, 117 Ga. 800, 45 S. E. Rep. 73.

It became a portion of the king's executive power as *parens patriae*. Yeomans v. Williams, *supra;* Dodge v. Cole, 97 Ill. 338, 37 Am. Rep. 111; Howard v. Howard, 87 Ky. 616, 9 S. W. Rep. 411, 1 L. R. A. 610; Lemly v. Ellis, 146 N. C. 221, 59 S. E. 683.

So after the Revolution the power became vested in the States, or the People thereof. Bliss v. Bliss, 133 Md. 61, text 71, 104 Atl. Rep. 467.

Insane persons are considered as wards of the State. Board of Chosen Freeholders of Camden County v. Ritson, 68 N. J. L. 666, 54 Atl. Rep. 839.

The jurisdiction rests upon two grounds: duty to protect the community from the acts of those who are not under the guidance of reason and, secondly, the State's duty to protect them as a class incapable of protecting themselves, which has its foundation in the reciprocal obligations of allegiance and protection. Matter of Colah, 3 Daly (N. Y.) 529; 32 C. J. 627.

Originally the king's jurisdiction of insane persons depended on the ownership of property by such persons but under our institutions where provision is made for the care of lunatics or insane persons the Legislature has no power to make the jurisdiction of the court in insanity proceedings depend on whether the person proceeded against is the owner of property. State v. Brasher, 200 Mo. App. 117, 201 S. W. Rep. 1150.

The Constitution of Florida provides that institutions for the benefit of the insane, blind or deaf, and such other benevolent institutions as the public good may require, shall be fostered and supported by the State, subject to such regulations as may be prescribed by law. Art. XIII, Sec. 1, Const.

This provision negatives the idea that the hospital for the insane provided by the State, or the other means provided for the custody and care of lunatics, may be considered in any manner as a prison. They are provided for the benefit and not the punishment of insane persons. Deusen v. Newcomer, *supra*.

The rule at common law is well settled that a person while insane cannot be tried, sentenced nor executed. It is obvious that if a person is tried while insane his insanity may disable him from making a rational defense. Freeman v. People, 4 Denio (N. Y.) 9, 47 Am. Dec. 216.

Both at common law and by statute in many jurisdictions, if at any time while criminal proceedings are pending against a person accused of crime, whether before or during or after the trial, the trial court from observation or upon the suggestion of counsel has facts brought to its attention which raise a doubt of the sanity of the defendant the question should be settled before further steps are taken. The method of settling the question is within the discretion of the trial court. 14 R. G. L. 606. See also note III, 38 L. R. A. 579; 16 C. J. 789.

A formal plea that a defendant is insane when placed upon trial is not necessary. Johnson v. State, 57 Fla. 18, 49 South. Rep. 40; Williams v. State, 45 Fla. 128, 34 South. Rep. 279.

Now the probate or chancery court has no criminal jurisdiction, and a lunacy or insanity proceeding is not in its nature a criminal proceeding but rather civil in character, and the degree of insanity which will authorize the adjudication of a person as insane is not always the same degree as will excuse the same person when tried for a crime, and the circuit court which has jurisdiction of the offense has ample means and power to determine the question of mental ability of the person accused to plead to the indictment and prepare his defense and the statute provides ample means for procuring the presence of the accused by capias or bench warrant which process runs throughout the State; the position is untenable that the guardian of the judicially declared insane person may substitute his will for the

custody of the ward by the court having jurisdiction of the crime. In Re McWilliams, 254 Mo. 512, 164 S. W. Rep. 221.

There is no merit in the proposition that the Circuit Court of the Second Circuit taking jurisdiction in habeas corpus to inquire into the legality of Deeb's detention by the Superintendent of the Hospital ousts the Circuit Court of Escambia County, which has jurisdiction of the crime charged, from the power to issue the necessary writs to procure the presence before that court of the accused. The purpose of the two writs is not the same. The two courts in their respective proceedings are not seeking the same end. The order of the Circuit Court of the Second Circuit remanding Deeb to the custody of the superintendent is merely confirmatory of the civil order of the county judge by which Deeb was placed in charge of a guardian. It in no wise determines *vel non* the legal incapacity of Deeb to plead to the indictment or prepare his defense.

The allegation in the suggestion for a writ of prohibition that to remove Deeb would impair his health is serious enough to warrant some attention if the allegation were more full as to facts to justify such conclusion because one purpose of the law in committing an insane person to the guardianship of the Superintendent of the Hospital is to procure for the insane person medical treatment looking to his ultimate restoration to health and sanity. It may be a good ground for his restoration to the custody of the superintendent if the Circuit Court of Escambia County conceives such ground to be well taken.

The writ of *habeas corpus ad respondendum et recipiendum* and the writ *ad prosequendum* have as stated been superseded by the ample provision of the statute for the arrest of the accused and there exists no longer any necessity for their use if indeed they have not become alto-

gether abandoned and superseded by other statutes so that the circuit court has no jurisdiction to issue them.

So the writ of prohibition is granted with leave to issue, if the circuit court deems it prudent to do so, any capias or bench warrant against the accused for service in the manner provided by statute. If the Superintendent of the Hospital, as guardian of Deeb, should refuse to surrender the custody of his ward to the proper officer from the Circuit Court of Escambia County mandamus would lie to compel such surrender which the Court of the Second Circuit or the Supreme ourt may issue in its discretion based upon proper considerations of the physical condition of Deeb and his need for constant medical treatment and the danger, if any, to his health which a removal of him may cause.

Prohibition granted.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

### SUPPLEMENTAL ORDER.

ELLIS, J.—Upon the suggestion of relator herein that a petition for a rehearing has been duly filed in this proceeding as permitted by the practice of this Court, and that the judgment of this Court finally disposing of this cause has not become effective, and will not become effective until the pending petition for a rehearing has been disposed of, and a writ of prohibition absolute either granted or denied, and that the right of the circuit court to change the present custody of one George J. Deeb is the subject matter of this cause, and that the effectiveness of this Court's jurisdiction to determine same will be impaired by any interference therewith during the pendency of this cause undisposed of by this Court, it is therefore ordered, by

virtue of Section 5 of Article V of the Constitution of this State, that an order be entered herein restraining the respondent judge of the circuit court from making or enforcing any further orders or writs interfering with the present custody of said George J. Deeb, until this proceeding has been finally disposed of by the granting, denial or dismissal of the pending petition for rehearing and the issuance of a writ of prohibition absolute or denial of same pursuant to a final disposition of this cause by this Court.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

## ON REHEARING.

ELLIS, J.—Upon consideration of the petition for rehearing in this cause it is ordered that said petition for a rehearing be and the same is hereby denied. It appearing that an injunctive order in aid of jurisdiction of this Court was issued in the cause on July 25th, 1933, pursuant to Section 5 of Article V of the Constitution of this State, it is further ordered that said injunctive order be and the same is hereby dissolved as of the date of the entry of this order denying rehearing all of which is directed to be certified to the Circuit Court of Escambia County, Florida.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.