PER CURIAM.
Dade County, a political subdivision of the State of Florida, has filed two petitions seeking writs of certiorari which have been consolidated. It seeks certiorari from two orders entered on June 5, 1970 by the Honorable Paul Baker, Judge of the Criminal Court of Record, in and for Dade County, Florida. These separate orders directed the Sheriff of Dade County to transport criminal defendants Martin and Sabol from the Dade County jail to Jackson Memorial Hospital in Miami, Florida, to be held in proper custody and ordered that while at Jackson they were “to be administered with the necessary and proper treatment for their mental incompetency.”
The record shows that Martin was a defendant in a pending criminal case and was adjudicated insane by Judge Baker on October 27, 1969. He was committed to the Florida State Hospital at Chattahoochee, Florida. Judge Baker requested a report on Martin. The proper officials at the state hospital issued a report on Martin dated December 22, 1969 which was filed with the court on January 6, 1970.
It reported, in part, that Martin had been previously adjudicated insane on June 11, *546 1968; that he had been charged with fifteen misdemeanors, fourteen felonies and aggravated assault with a knife; that he had four prior admissions to the Hollywood State Hospital and had escaped three times. It reported that his mental sickness was again active and no longer in remission; that he was in the maximum security building and that he required further treatment and hospitalization.
On January 6, 1970, the attorney for Martin filed a “Motion to Remove Defendant” from the Florida State Hospital in Chattahoochee. Attached to the motion was a lengthy handwritten letter from Martin to his father alleging neglect and mistreatment, past and prospective, on the part of his custodians at the hospital in Chattahoochee. On January 22, 1970, Judge Baker entered an order granting this motion and ordered Martin to be removed from Chattahoochee and returned to the Dade County jail for further proceedings in his criminal case. This was done on February 10, 1970.
The county, in its petitions for certiorari, contends that § 917.01, Fla.Stat., F.S.A., requires “the proper officer” of the state hospital to report to the criminal court that a criminal defendant who has been adjudicated insane has become sane and that the court must then fix a time for a hearing to determine whether the defendant is in fact sane. It argues that Judge Baker did not follow the requirements of the statute or the law in entering the order of January 22, 1970 and, consequently, that order is invalid. It concedes that the time for seeking review of the order of January 22, 1970 had expired when it filed its petitions for certiorari here on June 12, 1970 and admits that it might not have proper standing to seek review of the order of January 22, 1970.
For reasons recited hereafter we do not feel it necessary to pass on the validity, vel non, of the order of January 22, 1970.
After Martin was returned to Dade County on or about February 10, 1970, he was kept in custody at the Dade County jail until Judge Baker entered the order of June 5, 1970,. herein challenged by Dade County as being a departure from the essential requirements of law.
Jerry Russell Sabol was charged with the crime of escape on July 10, 1968; adjudicated insane by Judge Baker on September 25, 1968 and committed to the Florida State Hospital at Chattahoochee on that date. Subsequently, on November 24, 1969, the court ordered that he be returned to Dade County to stand trial. On December 19, 1969, Judge Baker again adjudicated Sabol insane and he was committed to the South Florida State Hospital at Hollywood, Florida. On January 26, 1970 a similar order of insanity was entered by Judge Baker.
On April 7, 1970, Sabol was given a competency discharge as mentally competent by the authorities at the South Florida State Hospital. On May 8, 1970, Judge Baker conducted a hearing concerning the sanity and treatment of Sabol.
At this hearing there was testimony from three doctors who had examined Sabol. There was testimony that he had an antisocial personality; that he had several prior escapes from state hospitals; that he had escaped on one occasion by holding a razor at someone’s throat; that he had previously been classified as “homicidal and extremely dangerous.”
On June 5, 1970, Judge Baker entered the orders herein challenged by Dade County as being a departure from the essential requirements of law. * * *
Formerly Section 917.01(1) and (2), Fla. Stat., F.S.A. and now Rule 1.210(a), “CrPR”, 33 F.S.A., set forth the procedure to be followed in a criminal case after the defendant has been declared insane.
Rule 1.210(a), “CrPR”, requires that the court, after an adjudication of insanity, “shall commit the defendant to the proper institution.” “If, after a defendant has been committed to an institution as insane, *547 the proper officer of such institution is of the opinion that the defendant is sane, the court shall fix a time for a hearing to determine whether the defendant is sane. The hearing shall be conducted in the same manner as the original hearing to determine the defendant’s sanity. If found sane, the trial shall proceed; if found insane, he shall be recommitted as hereinabove set forth.”
It is apparent, and admitted, that as of the date of the order of June 5, 1970 both Martin and Sabol had been adjudicated insane by Judge Baker and that those adjudications of insanity had not been set aside or vacated. This view is also supported by the separate orders of June S, 1970 which required that Martin and Sabol be administered with the necessary and proper treatment, while at Jackson Memorial Hospital, for “mental incompetency”.
The essential point for consideration is whether a judge of the Criminal Court of Record, in and for Dade County, Florida, may commit a criminal defendant who has been adjudicated insane to Jackson Memorial Hospital, a Dade County hospital, for treatment for mental incompetency when the hospital is not a party to the case.
Dade County argues that Jackson Memorial Hospital is a County hospital (Chapter 155, Fla.Stat., F.S.A.) and that it is not equipped or staffed, physically or fináncially, to treat, guard, and maintain criminal defendants who have been adjudicated insane; that there would be great exposure of physical harm to its other patients and staff and great exposure to financial liability on the part of the County if the hospital was required to accept criminally insane defendants, which it is not required to do by law. It argues that the State has provided Florida State Hospitals to treat and care for the mentally ill at Chattahoochee, Hollywood, Arcadia, and other places in Florida. See Chapter 394, Fla. Stat, F.S.A.
We agree. A “proper institution”, as set forth in the Rule for the commitment of criminal defendants who have been adjudicated insane is a State hospital created under Chapter 394, Fla.Stat. [subject to its provisions] and not a County hospital. These State hospitals are built, staffed, and maintained by the State under statewide taxes to treat and care for mental incompetents who are committed to them as wards of the State of Florida.
In State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207 (1933), the Supreme Court of Florida said:
* * * * * *
“Insane persons are considered as wards of the state. * * *
“The jurisdiction rests upon two grounds: Duty to protect the community from the acts of those who are not under the guidance of reason; and secondly, the state’s duty to protect them as a class incapable of protecting themselves, which has its foundation in the reciprocal obligations of allegiance and protection.”
* * * . * * *
See also 17 Fla.Jur. Insane, Etc., Persons § 3.
§ 394.01(2), Fla.Stat., F.S.A., provides:
******
“Patients committed by proper courts in pursuance of the provisions of this chapter, as now or hereafter amended, shall be committed only to the director of mental health who shall assign such patients to such institution as he may deem proper and who, by proper rules and regulations, shall provide for the transfer of patients between such institutions.” (Emphasis added)
***** *
We have, therefore, decided that Dade County may properly seek certiorari from *548 the order of June 5, 1970. See State ex rel. Landis v. Crawford, 104 Fla. 440, 140 So. 333 (1932); Deans v. Wilcoxon, 18 Fla. 531 (1882); and Dade County v. Carr, Fla. App.1970, 231 So.2d 844.
We find that it is a departure from the essential requirements of the law for a Judge of the Criminal Court of Record, in and for Dade County, Florida, to enter an order of commitment which requires and directs Jackson Memorial Hospital, a county hospital, to admit and treat, without its consent, criminal defendants who have been declared insane in a case where the court has no proper jurisdiction over the county hospital.
The orders of June 5, 1970 appear to have been based on the good motives of Judge Baker in an attempt to get better and more complete treatment for these two defendants. It seems that they, and Judge Baker, were dissatisfied with the treatment and care which they had received for their mental incompetency while in the various state hospitals.
It may be true that they are not receiving treatment and care which they, or Judge Baker, feel is sufficient or adequate at the state hospitals to which they have been previously committed. It also may not be true. That is not the question before us.
Even assuming arguendo that their treatment and care was insufficient at the State hospitals, there is no legal authority which permits Judge Baker to transfer custody of these two insane criminal defendants to a County-maintained hospital and order it to treat them for their mental incompetency.
The petitions for writs of certiorari are granted, and the orders of June 5, 1970 are vacated and quashed accordingly.
It is so ordered.